# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JOSEPH DIXON,

    Plaintiff,

v.

PRIMECARE MEDICAL, INC.,
DR. ROCHELLE HERMAN and
BALTIMORE COUNTY DETENTION
CENTER,

    Defendants.

Civil Action No.: TDC-20-2806

## MEMORANDUM OPINION

Joseph Dixon, an inmate incarcerated at the Baltimore County Detention Center ("BCDC") in Towson, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges that he experienced adverse side effects from medications prescribed by Dr. Rochelle Herman, a medical provider at BCDC. Pending before this Court is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants PrimeCare Medical, Inc. ("PrimeCare") and Dr. Rochelle Herman (collectively, the "PrimeCare Defendants") and a Motion to Dismiss filed by Defendant BCDC. While Dixon filed a memorandum in opposition to the PrimeCare Defendants' Motion, which Dixon has labeled as an Alternative Motion for Summary Judgment, Dixon has not filed a response to BCDC's Motion even though he was sent notice of that Motion and his right to oppose it. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions to Dismiss will both be GRANTED, and Dixon's Alternative Motion for Summary Judgment will be DENIED AS MOOT.

## BACKGROUND

During an intake session when Dixon arrived at BCDC on April 18, 2020, Dixon stated that he has a history of mental illness, including depression and post-traumatic stress disorder, and requested to see a mental health provider. During his mental health intake session, Dixon stated that he was diagnosed with anxiety and a depressive disorder in January 2020, but he was unable to secure medication due to the COVID-19 pandemic. He was referred to psychiatry and met with Dr. Rochelle Herman on April 23, 2020.

According to Dixon, Dr. Herman evaluated him and informed him that if he followed instructions he could manage his "mental health issues." Compl. at 3, ECF No. 1. Dr. Herman prescribed 10 mg of BuSpar and a 20 mg Prozac capsule to be taken daily. When Dixon asked about any health risks associated with the medication, Dr. Herman told Dixon that there was "[n]othing to worry about." *Id.* Dr. Herman, however, has stated that she discussed potential side effects of the medication with Dixon.

During an appointment on May 21, 2020, Dr. Herman increased Dixon's prescription to 15 mg of BuSpar and continued with the same Prozac dose. Dixon did not report any side effects at that time. On June 17, 2020, at Dixon's request, Dr. Herman discontinued the BuSpar prescription and switched to a 25 mg of Hydroxyzine. According to Dr. Herman, she discussed possible side effects with Dixon.

Dixon asserts that after several months of taking the medications, his chest began to enlarge and have increased sensitivity. When he reported these changes to Dr. Herman on July 27, 2020, she noted that he had "developed a small firm tender nodule" in his right breast area behind the nipple. Med. Records at 38, PrimeCare Mot. Dismiss Ex. A, ECF No. 13-2. Dr. Herman ordered an ultrasound, which revealed that Dixon had benign gynecomastia, an enlargement or swelling of

breast tissue in males sometimes caused by certain medication. This condition did not require further treatment. Dixon's Prozac prescription was switched to 15 mg of Remeron. At an appointment with Dr. Herman on August 31, 2020, Dixon stated that he had stopped taking his medications because he did not trust the medication. Although Dr. Herman told Dixon that all antidepressant medication carries a risk of gynecomastia and prescribed alternative medications, Dixon refused to take any mental health medication going forward.

## DISCUSSION

In their two Motions, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. BCDC argues that it is not an entity subject to suit under § 1983. The PrimeCare Defendants assert that (1) Dixon cannot maintain a claim against PrimeCare because vicarious liability is not available for § 1983 claims; and (2) Dixon fails to state or establish a valid claim against Dr. Herman for deliberate indifference to serious medical needs, in violation of the Eighth Amendment to the United States Constitution.

### I.  Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

3

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the titles of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Dixon did not respond to BCDC's Motion and thus has not asserted that he needs additional discovery in order to address that Motion. As to the PrimeCare Defendant's Motion, Dixon asserts that his medical records were not provided as a "whole," such that he has been hindered in opposing that Motion. Pl.'s Alt. Mot. Summ. J. at 1, ECF No. 21. Here, however, Dixon fails to identify any relevant medical visits, examinations, or procedures for which the records are incomplete or missing; he has not described any evidence or arguments that he cannot fairly present without additional medical records; and he has not explained how such records would create a genuine

4

issue of material fact necessitating the denial of summary judgment. *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) (stating that a non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment"). Thus, Dixon has not shown, as required for denial of summary judgment on the grounds that additional discovery is necessary, that discovery is needed to obtain facts "essential to justify [the] opposition." Fed. R. Civ. P. 56(d); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 419-20 (D. Md. 2006). Where Dixon has not met the standard to require discovery before resolution of the Motions, the Court will construe Defendants' Motions as motions for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

5

## II. BCDC

BCDC argues that it must be dismissed from this case because it is not a "person" subject to suit under § 1983. *See* 42 U.S.C. § 1983 (2018). A number of courts have held that a detention facility is not a "person" subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Even if Dixon were to amend the Complaint to assert a claim against Baltimore County, a local government entity, rather than BCDC, the claim would still fail because there are no allegations, as required for a § 1983 claim against a local government, that a Baltimore County official acted pursuant to a government custom or policy violating constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). Accordingly, the claims against BCDC will be dismissed.

## II. Eighth Amendment

The PrimeCare Defendants argue that Dixon has neither alleged nor presented sufficient facts to support a claim that Dr. Herman or PrimeCare provided inadequate medical care in violation of the Eighth Amendment, which protects prisoners from "cruel and unusual punishment" and prohibits "unnecessary and wanton infliction of pain" against inmates. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). In order to state an Eighth Amendment claim for

inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official

7

"responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

A review of Dixon's allegations and the record evidence establishes that Dixon has not provided a sufficient basis to support his deliberate indifference claim. Dixon asserts that in prescribing mental health medication, Dr. Herman failed to adequately warn him of the side effects of his medication, specifically gynecomastia. Even assuming that Dixon's mental health condition was an objectively serious medical condition, Dixon has not shown how Dr. Herman's decisions to prescribe certain medications exhibited deliberate indifference to serious medical needs. There is no claim or evidence that the medications were not part of accepted medical treatment for Dixon's mental health conditions, even with the risk of benign gynecomastia. Even accepting Dixon's claim, contradicted by the evidentiary record, that Dr. Herman did not fully advise him of the risk of side effects such as benign gynecomastia, such an oversight in the context of providing an accepted form of medical treatment for Dixon's condition would not rise to the level of deliberate indifference as there is no evidence that such an omission, which Dixon characterizes as "negligent," Compl. at 2, was made for the purpose of causing harm or with knowledge that it would cause harm. *See Scinto*, 841 F.3d at 225.

Finally, even assuming that benign gynecomastia, which Dixon describes as his "breast area start[ing] to swell" and becoming enlarged and "sensitive," Compl. at 3, was itself an objectively serious medical condition, Dr. Herman switched Dixon's medications, at his request, upon Dixon's first report of possible gynecomastia and thus was not deliberately indifferent to that condition. While Dixon may disagree with the level of care or the thoroughness of the explanation of specific side effects, the record does not support the conclusion that Dr. Herman acted with deliberate indifference in the provision of medical care to Dixon. *See Scinto*, 841 F.3d at 225.

8

Where the claim against PrimeCare is based entirely on the conduct of Dr. Herman, the Motion will be granted as to both PrimeCare Defendants.

## CONCLUSION

For the foregoing reasons, the PrimeCare Defendants' Motion to Dismiss and BCDC's Motion to Dismiss will be GRANTED. Dixon's Alternative Motion for Summary Judgment will be DENIED AS MOOT. A separate Order shall issue.

Date: August 19, 2021

THEODORE D. CHUANG
United States District Judge